O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA MEZA,<br><br>                    Plaintiff,<br>          v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. EDCV 10-1347-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

[2]  As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

**I.**

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)    Whether the Administrative Law Judge ("ALJ") properly considered the opinions of the medical expert; and

(2)    Whether the ALJ properly considered Plaintiff's testimony and the lay witness statement.

(JS at 3.)

**II.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

**III.**

**DISCUSSION**

**A.      The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of overactive bladder, depression, and anxiety.  (Administrative Record ("AR") at 16.)  The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled, nonpublic, and non-detailed medium work with the following limitations: occasional postural activities; no balancing, climbing ladders, or scaffolds; and no exposure to excessive odors, dust, fumes, and gases.  (Id. at 17.)

Relying on the testimony of the vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the unskilled medium occupational base, the ALJ asked the VE whether, in light of Plaintiff's age, education, work experience, and RFC, she would be able to perform her past relevant work.  (Id. at 24-25, 48.)  Based on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of Plaintiff's past relevant work as an Order Selector (Dictionary of Occupational Titles ("DOT") No. 922.687-0589), and Shipping Clerk (DOT No. 222.387-050), both as actually performed by Plaintiff and as generally performed in the regional and national economy.  (Id.)

**B.      The ALJ Properly Considered the Testimony of the Medical Expert.**

Plaintiff argues that the ALJ failed to properly consider the testimony of the medical expert.  Plaintiff concedes that the ALJ accurately summarized the evidence at issue, except to the extent that the ALJ rejected the medical expert's recommendation that Plaintiff be limited to lifting only twenty to forty pounds and have ready access to restroom facilities.  (JS at 4-9.)  Plaintiff's contention lacks merit.

At Plaintiff's hearing before the ALJ, Samuel Landau, M.D., offered medical expert testimony.  Dr. Landau testified that Plaintiff suffers from overactive bladder syndrome or interstitial cystitis, right nephrectomy that is not

1   medically severe, and psychiatric diagnoses.  (AR at 30-31.)  Dr. Landau testified

2   that Plaintiff's impairments do not meet or medically equal a listed impairment.

3   (Id. at 31.)

4         Dr. Landau further offered his opinion as to Plaintiff's physical limitations,

5   as follows:

6            I would limit standing, walking, or sitting to six hours out of

7         eight, and that's either one of them.  Stand six, walk six, or sit six with

8         normal breaks such as very [sic] two hours.  Lifting and carrying would

9         be limited to 20 pounds frequently and 40 pounds occasionally, and she

10        can climb stairs but she can't climb ladders, work at heights, or balance.

11        Her work environment should be air conditioned, and that's all.

12  (Id. at 31.)

13        On further questioning regarding Plaintiff's overactive bladder syndrome or

14  interstitial cystitits, Dr. Landau concluded that "one could add that she should

15  have ready access to restroom facilities, I suppose."  (Id. at 31-32.)

16        "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the

17  medical evidence."  Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir.

18  2008).  In addition, the ALJ is charged with the ultimate determination of a

19  plaintiff's RFC.  20 C.F.R. § 404.1546(c).  To this end, the opinion of a non-

20  examining physician is not binding on the ALJ.  20 C.F.R. § 404.1527(f)(2).  An

21  opinion of a non-examining medical expert may constitute substantial evidence to

22  support an ALJ's determination only when it is consistent with other independent

23  evidence in the record.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

24  2001).  Ultimately, the Court "must uphold the ALJ's decision where the evidence

25  is susceptible to more than one rational interpretation."  Burch v. Barnhart, 400

26  F.3d 676, 680-81 (9th Cir. 2005).

27        Here, Plaintiff complained of frequent urination.  However, despite

28  extensive medical investigation into her alleged symptoms, there is absolutely no

1  objective medical evidence of an underlying medical impairment that would cause

2  Plaintiff's symptoms, particularly to the severity she alleges.  Moreover, none of

3  the many physicians who examined Plaintiff indicated that she would need an

4  accommodation for frequent use of the restroom, or that she would be limited in

5  her ability to lift more than forty pounds.  Notably, treatment notes from Dr. Marc

6  Avent, D.O., at the Cucamonga Valley Medical Group, indicate that he could not

7  rule out factitious disorder.[3]  (AR at 481.)  Even Dr. Landau appeared hesitant in

8  recommending that Plaintiff have ready access to a restroom.  (Id. at 32.)  Finally,

9  despite Plaintiff's claims that she used the restroom every three to five minutes,

10  she was able to sit through the entire hearing before the ALJ without a restroom

11  break.  (Id. at 19, 28-50.)

12      Since no independent evidence supported the medical expert's limitation on

13  Plaintiff's ability to lift more than forty pounds, and his conclusion that Plaintiff

14  needed an accommodation for the use of the restroom, the expert's opinion on

15  these points did not amount to substantial evidence on which the ALJ could have

16  based his RFC determination.  Tonapetyan, 242 F.3d at 1149.  Accordingly, the

17  ALJ reasonably excluded such limitations from Plaintiff's RFC.  Thus, there was

18  no error.

19  **C.      The ALJ Properly Assessed Plaintiff's Credibility.**

20      Plaintiff faults the ALJ for failing to provide sufficient reasons for rejecting

21  her subjective complaints of impairment.  (JS at 16-19.)  The Court disagrees.

22      In his opinion denying benefits, the ALJ considered Plaintiff's subjective

23  complaints as follows:

24          The claimant reported she spent the majority of her days lying

25          down and resting because she felt tired.  She stated she had one kidney

26  _____

27      [3]  Factitious disorders are conditions in which a person acts as if he or she

28  has an illness by deliberately producing, feigning, or exaggerating symptoms.
   (AR at 19 n.1.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

removed over 20 years prior.  The claimant described no problems with personal care, preparing her own meals, and light household cleaning. She reported her activities of daily living included cooking, shopping, money management, driving, visiting her daughter, and watching television.  Although the claimant's activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition.  The undersigned finds the claimant's ability to participate in such activities diminishes the credibility of the claimant's allegations of functional limitations.

The undersigned finds the claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully credible.  The allegations of having to use the restroom every five minutes on a daily basis despite being medicated are inconsistent with the objective medical evidence which indicates an attempt by the claimant to exaggerate the severity of her symptoms.  The claimant specifically testified she uses the restroom every five minutes, 24 hours a day.  She adamantly stated this occurred every day, even when she is sleeping.  The claimant was able to sit through the 40-minute hearing without any restroom interruption.

. . . .

The claimant has provided testimony which is inconsistent with the evidence of record.  She testified the prescribed antibiotics were ineffective.  There is no indication in the medical record the claimant ever informed her doctors she felt the antibiotics were ineffective.  In fact, in August 2007, the claimant was adamant about receiv[ing] a refill

1   on her prescriptions.  The claimant testified her overactive bladder and

2   depression were the only reasons why she could not maintain a full-time

3   job.  However, in May 2008, the claimant informed her doctor she was

4   applying for disability due to fatigue.  She attributed her fatigue to the

5   fact she had only one kidney.  She also updated her doctor she was

6   seeing a doctor in Anaheim for her nerves and that was what kept her on

7   disability since January 2008.  In March 2008, the claimant's own

8   treating physician noted "factitious disorder" could not be ruled out.

9   These discrepancies diminish the persuasiveness of the claimant's

10  subjective complaints and alleged functional limitations.

11           After careful consideration of the evidence, the undersigned finds

12  that the claimant's medically determinable impairments could

13  reasonably be expected to cause some of the alleged symptoms;

14  however, the claimant's statements and the statements by her daughter

15  concerning the intensity, persistence and limiting effects of these

16  symptoms are not credible to the extent they are inconsistent with the

17  above residual functional capacity assessment.

18  (AR at 18-19 (citations omitted).)

19       An ALJ's assessment of pain severity and claimant credibility is entitled to

20  "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

21  Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a

22  claimant's testimony is a critical factor in a decision to deny benefits, the ALJ

23  must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231

24  (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also

25  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

26  claimant was not credible is insufficient).

27       Under the "Cotton test," where the claimant has produced objective medical

28  evidence of an impairment which could reasonably be expected to produce some

1  degree of pain and/or other symptoms, and the record is devoid of any affirmative

2  evidence of malingering, the ALJ may reject the claimant's testimony regarding

3  the severity of the claimant's pain and/or other symptoms only if the ALJ makes

4  specific findings stating clear and convincing reasons for doing so.  See Cotton v.

5  Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d

6  1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);

7  Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

8       To determine whether a claimant's testimony regarding the severity of his

9  symptoms is credible, the ALJ may consider, *inter alia*, the following evidence:

10  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation

11  for lying, prior inconsistent statements concerning the symptoms, and other

12  testimony by the claimant that appears less than candid; (2) unexplained or

13  inadequately explained failure to seek treatment or to follow a prescribed course of

14  treatment; (3) the claimant's daily activities; and (4) testimony from physicians

15  and third parties concerning the nature, severity, and effect of the claimant's

16  symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also

17  Smolen, 80 F.3d at 1284.

18       Here, the ALJ provided several clear and convincing reasons for finding

19  Plaintiff's subjective complaints of impairment less than credible.

20       The ALJ cited Plaintiff's ability to engage in activities of daily living that

21  require the same abilities as those necessary to obtain and maintain employment,

22  and noted that Plaintiff's ability to perform these activities is inconsistent with an

23  incapacitating or debilitating condition.  (AR at 18.)  Daily activities may be

24  grounds for an adverse credibility finding "if a claimant is able to spend a

25  substantial part of his day engaged in pursuits involving the performance of

26  physical functions that are transferable to a work setting."  Fair v. Bowen, 885

27  F.2d 597, 603 (9th Cir. 1989); see also Burch, 400 F.3d at 681 (adverse credibility

28  finding based on daily activities may be proper "if a claimant engaged in

1   numerous daily activities involving skills that could be transferred to the

2   workplace"). In her April 23, 2008, Function Report, Plaintiff stated that she

3   prepares meals for herself, completes housework, has no difficulty caring for

4   herself, is able to go out alone and drive herself, goes shopping "a couple days a

5   week for an hour," visits with family and friends, and has no problem paying

6   attention. (AR at 145-50.) Although Plaintiff did complain of getting tired and

7   needing rest, substantial evidence supports the ALJ's conclusion that Plaintiff is

8   able to engage in a significant amount of daily activities, and that Plaintiff's daily

9   activities, such as interacting with others, completing household chores and

10  shopping, and being able to pay attention for long periods, are directly

11  transferrable to a work environment.

12         The ALJ also reasonably concluded that Plaintiff's allegations that she

13  needs to use the restroom every three to five minutes are inconsistent with the

14  evidence of record. Despite Plaintiff's allegations that she cannot go more than

15  five minutes without using the restroom, there is no indication in the transcript of

16  the hearing before the ALJ that the proceeding was stopped so that Plaintiff could

17  use the restroom. (Id. at 26-50.) In fact, in his opinion, the ALJ specifically stated

18  that Plaintiff did not take any restroom breaks during the forty-minute hearing.

19  (Id. at 19.)[4] Moreover, in her Function Report, Plaintiff stated that she was able to

20  go shopping twice a week for an hour, and that every six months she travels the

21  distance from her home in Fontana to her cousin's house in Los Angeles. (Id. at

22  148, 150.) Significantly, there is no medical evidence in the record to support

23  Plaintiff's allegation of such frequent use of the restroom. Rather, in one note,

24  Plaintiff's treating physician stated that he could not rule out factitious disorder

25  (id. at 481), and on another occasion noted that the nephrologist indicated that

26

27         [4] The only evidence of a pause in the proceeding was when the ALJ went
28  off the record as he attempted to reach the medical expert, who testified by phone.
    (AR at 30.)

1   Plaintiff's condition might be psychosomatization. (Id. at 502.) Crucially,

2   Plaintiff often denied to her treating physicians that she experienced symptoms of

3   urinary frequency or urgency. (Id. at 475, 493, 497, 503.)

4        In addition, the ALJ's conclusion that some of Plaintiff's allegations were

5   contradicted by the record is supported by substantial evidence. Plaintiff gave

6   conflicting testimony at the hearing regarding the effectiveness of her prescribed

7   medications. For instance, she testified that her antibiotics were not working. (Id.

8   at 39.) Then she testified that the antibiotics "control" her symptoms but do not

9   "completely help it." (Id. at 40.) She also testified that even with medication she

10  still had to use the restroom every five minutes. (Id. at 41.) Finally, she testified

11  that when she first begins taking the medication, she is able to go longer than five

12  minutes without using the restroom, but after three days she "feel[s] bad again."

13  (Id. at 43.) Despite these varied allegations, Plaintiff never complained to her

14  doctors about the effectiveness of her medications. In fact, on March 17, 2008,

15  Plaintiff reported to Dr. Avent that her antibiotics were helping, except when she

16  ate meat. (Id. at 480.) On May 23, 2007, Plaintiff informed her treating physician

17  that when she suffers from bladder related symptoms, the only thing that helps is

18  antibiotics. (Id. at 499.) Also, as noted by the ALJ on August 15, 2007, Plaintiff

19  was "adamant that she need[ed] a [prescription] for either Cipro or Macrobid, max

20  dose for either, for 10 days" because she was afraid of a recurrence of a urinary

21  tract infection. (Id. at 493.)

22       Finally, the ALJ correctly stated that Plaintiff was inconsistent in her

23  allegations as to the cause of her disability. On April 4, 2007, while being treated

24  for back pain, Plaintiff requested that her physician place her on disability for one

25  month, but her physician refused. (Id. at 505.) In addition, on May 21, 2008,

26  Plaintiff informed her treating physician that she was unable to work due to

27  fatigue related to the removal of one of her kidneys. However, on the same day,

28  she informed her doctor that she was seeing another physician "for her nerves,"

1   and that physician had kept her on disability.  (Id. at 475.)  Despite these earlier

2   claims to her doctors, Plaintiff testified at the hearing before the ALJ that it was

3   her depression and overactive bladder that prevented her from working.  (Id. at

4   41.)

5        Based on the foregoing, the Court finds that the ALJ stated specific and

6   legitimate reasons, supported by substantial evidence in the record, for rejecting

7   Plaintiff's credibility.  Thus, there was no error.

8   **D.     The ALJ Properly Considered the Lay Witness Statements.**

9        Plaintiff claims that the ALJ erred in ignoring the Third Party Function

10  Report completed by Plaintiff's daughter.  (JS at 18-19.)  The Court disagrees.

11       Plaintiff's daughter reported in a April 23, 2008, Third Party Function

12  Report that she visits Plaintiff every other day and that Plaintiff is in bed every

13  time she visits.  (AR at 137.)  Plaintiff's daughter also claimed that Plaintiff cannot

14  complete household chores and needs help with cleaning.  (Id. at 139.)  She

15  claimed that Plaintiff often is able to cook her own meals, but sometimes needs

16  assistance.  (Id. at 139.)  She stated that Plaintiff is only able to do household

17  shopping once every two weeks and that she only goes out for thirty minutes.  (Id.

18  at 140.)  Plaintiff's daughter also stated that Plaintiff does not spend time with

19  others, but rather only talks on the phone.  (Id. at 141.)  She also claimed that

20  Plaintiff has great difficulty with paying attention and following instructions.  (Id.

21  at 142.)  As to her physical limitations, Plaintiff's daughter estimated that Plaintiff

22  could lift five pounds, stand for five minutes, walk for five minutes, and only

23  occasionally bend.  She stated that Plaintiff could not squat, kneel, and climb

24  stairs.  (Id.)

25       Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to

26  medical evidence, the Commissioner "may also use evidence from other sources to

27  show the severity of  [an individual's] impairment(s) and how it affects [her]

28  ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by

1   friends and family members in a position to observe a claimant's symptoms and

2   daily activities have routinely been treated as competent evidence." Sprague v.

3   Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn

4   hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

5   Cir. 1996)), as well as to unsworn statements and letters of friends and relatives.

6   See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

7   If the ALJ chooses to reject such evidence from "other sources," he may not do so

8   without comment.  Nguyen, 100 F.3d at 1467.  The ALJ must provide "reasons

9   that are germane to each witness."  Dodrill, 12 F.3d at 919.

10         The mere fact that the lay witness is a relative may not be a valid reason

11  alone for rejecting lay witness testimony.  Regennitter v. Comm'r of Soc. Sec.

12  Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).  An ALJ may, however, reject a lay

13  witness's testimony if the ALJ finds the witness to be biased.  See, e.g., Greger v.

14  Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (the ALJ's consideration of the

15  claimant's prior girlfriend's close relationship with the plaintiff and desire to help

16  him as a possible reason for bias was a reason germane to that witness).  Other

17  reasons "germane" to a particular witness include that the witness' testimony is

18  contradicted by the medical evidence of record.  See Bayliss v. Barnhart, 427 F. 3d

19  1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)

20  ("One reason for which an ALJ may discount lay testimony is that it conflicts with

21  medical evidence"); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th

22  Cir. 1984) (per curiam) ("The ALJ properly discounted lay testimony that

23  conflicted with the available medical evidence.").

24         Here, the ALJ acknowledged the Third Party Function Report submitted by

25  Plaintiff's daughter and rejected it as follows:

26              The undersigned also read and considered the third party function

27         report completed by the claimant's daughter, Cecilia Meza, on April 23,

28         2008.  The statements made by the claimant's daughter have not been

1   given under oath and appear to be no more than a parroting of the

2   subjective complaints already testified to and reported by the claimant.

3   Ms. Meza stated the claimant had severely limited physical activities

4   and spent the majority of her days in bed.  She reported the claimant

5   could not lift more than five pounds and could not stand and/or walk for

6   more than five minutes.  The limitations stated by Ms. Meza are even

7   more restrictive than the claimant's own allegations.  The claimant's

8   daughter is not a medical professional and as a lay witness she is not

9   competent to make a diagnosis or argue the severity of the claimant's

10  symptoms in relationship to her ability to work or the side effects of

11  medications.  The claimant's daughter has a familial interest in seeing

12  the claimant receive benefits.  Therefore her opinion is not an unbiased

13  one.  Most importantly, her statements are not supported by the clinical

14  or diagnostic medical evidence that is discussed more thoroughly below.

15  (AR at 19 (citation omitted).)

16     Thus, the ALJ found that Ms. Meza's report, while it parroted Plaintiff's

17  complaints, in some ways was even more restrictive than the complaints reported

18  by Plaintiff, was not given under oath, may have been influenced by a desire to

19  help her mother obtain benefits,[5] was inconsistent with the medical evidence, and

20  to the extent Ms. Meza attempted to make a diagnosis or argue Plaintiff's inability

21  to work, was not competent testimony.  While the Court does not consider the

22  persuasiveness of the ALJ's reasons for rejecting the statements of Plaintiff's

23  daughter, ultimately, the ALJ provided several reasons for rejecting the third party

24

25

26    [5]  While this finding might not withstand scrutiny if it was the sole
justification offered by the ALJ, given that the ALJ offered other reasons casting

27  into doubt the extent of limitation to which Plaintiff's daughter testified, the Court

28  finds that the credibility determination was, as a whole, supported by sufficient
reasons germane to the witness.

13

1  evidence that were germane to the witness.

2      Based on the foregoing, the Court finds that the ALJ fulfilled his duty to

3  consider the evidence and provided sufficient reasons for rejecting the lay witness

4  testimony.  Thus, there was no error.

5                                    **IV.**

6                                   **ORDER**

7      Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be

8  entered affirming the decision of the Commissioner, and dismissing this action

9  with prejudice.

10

11 Dated: April 18, 2011

                           HONORABLE OSWALD PARADA
12                         United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28